## LIENS FOR FEES OF AN ATTORNEY UPON THE JUDGMENT RECOVERED.

Common Pleas Court of Franklin County.

### CYRUS HULING v. THE CITY OF COLUMBUS AND JOHN W. WALCUTT.

Decided, September 23, 1912.

*Attorney and Client—Lien may be Asserted on Judgment for Serivices Rendered—Extent of Such Lien—Mode of Trial—Right of Trial by Jury has not been Extended by Section 11379—But Court of Equity Takes Jurisdiction for All Purposes.*

1. An attorney acquires an equitable lien on the proceds of a judgment recovered through his efforts in favor of his client, and where no agreement was entered into as to the amount of his compensation the extent of the lien so acquired will be the reasonable value of the services rendered.

2. An action to determine the amount due to an attorney on account of services in procuring a judgment in process of settlement is an equitable proceeding, properly referable to a master for report, and does not fall under Section 11379, which merely preserves the common law right of trial by jury, and does not extend to cases peculiar to a court of equity. *Gausaullus v. Pettit*, 46 Ohio St., 27, criticized.

*John E. Todd,* for plaintiff.
*J. H. Dyer* and *G. H. Stewart,* for cross-petitioners.
*Addison, Sinks & Babcock,* for Walcutt.

KINKEAD, J.

The defendant, Walcutt, obtained a judgment against the city of Columbus. Plaintiff was his attorney, and brings this action for the recovery of compensation for his services.

The petition sets forth the facts concerning the action prosecuted by Walcutt against the city of Columbus, wherein recovery was had for $26,255.13. Two causes of action were pleaded in the petition, the first in *quantum meruit,* wherein it was claimed that the services were reasonably worth $10,000.

The second cause sets forth a claim of Frank A. Davis, who was original counsel for Walcutt, the various facts concerning

the services rendered by Davis being alleged, it being claimed that his services were reasonably worth $5,000, and that the claim of Davis was assigned to plaintiff.

The prayer of the petition is that the court on final hearing shall fix and determine the amount of the reasonable compensation of plaintiff at $10,000, or such other sum as the court may deem just and proper, and decree and order that such sum so found by the court be and operate as a lien upon the fund and proceeds of the judgment and order the same to be paid out of such fund; also that the reasonable compensation of said Davis be fixed at $5,000, or such other sum as the court deems proper, and decree and order that amount to be a lien upon the judgment.

Defendant, Walcutt, admits employment of counsel and the services rendered and claims that the services were not worth the amount claimed.

Gilbert H. Stewart, by answer and cross-petition, sets forth a similiar claim for $1,000, and Joseph H. Dyer, as administrator of Eli P. Evans, sets forth a like claim for $1,000.

The defendant files an affidavit of interpleader setting forth the amount of judgment against it for $30,579.67, stating that it is ready and willing to pay the same to the clerk of this court in order that the claimants may settle their claims between themselves.

The case was referred to a master commissioner for hearing, over the objections of defendant, Walcutt, who also protested and objected to the hearing by the master and taking no part therein whatever.

The master commisioner heard the evidence and rendered his finding of facts and conclusions of law, to which exceptions are filed in this court. He found $15,000 to be the reasonable value of the services rendered by Cyrus Huling and Frank A. Davis, and $1,000 each to be the reasonable value of the services rendered by Gilbert H. Stewart and Eli P. Evans. The amount of money still in the hands of the city of Columbus and due upon the judgment is $16,000.

It has not been authoritatively determined by the court of last resort in this state that an attorney has a lien on a judgment for his services. Incidentally the right to a lien was recognized

in the opinion in the cases of *Diehl* v. *Friester,* 37 O. S., 473, 477, and *Reece* v. *Kyle,* 49 O. S., 480.

In a number of states the right to such lien is recognized by statute: *Hanna* v. *Island Coal Co.,* 5 Ind. App., 163 (51 Am. St., 246); *Filmore* v. *Wells,* 16 Colo., 228 (3 Am. St., 567); *Renick* v. *Ludington,* 16 W. Va., 278; *Cromley* v. *LeDue,* 21 Minn., 412; *Goodrich* v. *McConald,* 112 N. Y., 157; *Reynolds* v. *Id.,* 10 Neb., 574; *Hurst* v. *Sheets,* 21 Iowa, 501; *Bang* v. *Culner,* 54 N. H., 327; *Baker* v. *Cook,* 11 Mass., 236; *Friesell* v. *Haute,* 18 Mo., 18; *Duber's Appeal,* 38 Pa. St., 231.

These statutes are merely declaratory of the common law (*Gist* v. *Hanly,* 33 Ark., 233). As stated in the opinion of the learned master in this case:

"It is now the recognized doctrine in this country, thoroughly incorporated in our jurisprudence, that an attorney is entitled to an equitable lien on a judgment recovered by him for his client, or to the recovery of which he contributed, to the extent of reasonable compensation for his services in the case."

This is called a special, or charging lien upon a judgment procured by him for his client. This right to recover for his services is called a lien, in the broad sense, although it rests merely upon the equity of the attorney to be paid for his services out of the judgment which he has obtained. The right called a lien is merely a right to ask for the intervention of the court for his protection, when there is a probability of the client depriving him of his interest in the fruits of the judgment.

The lien of an attorney upon a judgment is an equitable lien, and is upheld upon the theory that his services and skill produced it. All the decisions which recognize the rule "always speak of it as an equitable lien, right or privilege. It is not property in the thing which gives a right of action at law. It is a charge upon the thing which is protected in equity."

"The attorney's lien * * * is founded in the natural equity which forbids that a party should enjoy the fruits of the cause, without satisfying the legal demands of his attorney." *Fillmore* v. *Wells,* 10 Colo., 228 (3 Am. St., 567).

The rule was early recognized by the common law as being founded upon the plainest principles of equity and justice.

*Wilkins* v. *Carmichael,* 1 Doug., 104; *Baker* v. *St. Quentin,* 12 Wess. (A. W.), 441; *In re Vank, etc.,* 3 L. R. Ch. App., 125; *Turwin* v. *Gibson,* 3 Alk., 720; *Welsh* v. *Hale,* 1 Doug., 238; *Ex Parte,* 2 Ves., Sr., 407.

In most of the United States the rule is recognized and enforced the same as in England. The decisions extend the lien upon a .judgment to the extent of reasonable compensation for services in obtaining the judgment though there is no agreement concerning the amount. The extent of the lien, in such cases, is ascertained upon the basis of a *quantum meruit,* which may be ascertained by the court, or by a referee, upon a summary application.

Alabama: *Warfield* v. *Campbell,* 38 Ala., 527 (82 Am. Dec., 794); *Ex parte Lehman,* 59 Ala., 631; *Moseley* v. *Norman,* 74 Ala., 422.

Arkansas: *Sexton* v. *Pike,* 8 Eng., 193; *Waters* v. *Grace,* 23 Ark., 118.

California: *Mansfield* v. *Doland,* 2 Cal., 517; *Russell* v. *Conway,* 11 Cal., 103.

Connecticutt: *Benjamin* v. *Benjamin,* 17 Conn., 110; *Andrews* v.. *Morse,* 12 Conn., 444 (31 Am. Dec., 752); *Vooke* v. *Thresher,* 61 Conn., 105; *Honda, Carter* v. *Bennett,* 6 Fla., 215.

Georgia: *McDonald* v. *Napier,* 14 Ga., 89.

Maine: *Newbert* v. *Cunningham,* 50 Me., 231; *Hobson* v. *Watson,* 34 Me., 20 (56 Am. Dec., 632).

New Hampshire: *Wright* v. *Cobleigh,* 21 N. H., 339.

New Jersey: *Barnes* v. *Taylor,* 30 N. J. Eq., 467.

New York: *Rooney* v. *S. A. R. Co.,* 18 N. Y., 368; *Coughlin* v. *R. R. Co.,* 71 N. Y., 443 (27 Am. Rep., 75).

Tennessee: *Garner* v. *Garner,* 1 Lea, 29; *Covington* v. *Bass,* 88 Tenn., 496.

Vermont: *Weed* v. *Boutelle,* 56 Vt., 570 (48 Am. Rep., 84); 4 Cyc., 1005, 1006.

By some courts the attorney, to the extent of his compensation, is deemed to be an equitable assignee of the judgment, having a lien on it when recovered. *Rooney* v. *R. R. Co.,* 18 N. Y., 308; *Marshall* v. *Mich.,* 51 N. Y., 140 (10 Am. Rep., 572); *Coughlin* v. *R. R. Co.,* 71 N. Y., 443 (27 Am. Rep., 75); *Wright* v.

*Wright,* 70 N. Y., 98; *Ex parte Lehman,* 59 Ala., 631; *Mosely* v. *Norman,* 74 Ala., 422; *Gist* v. *Hawley,* 33 Ark., 233.

The sole point of controversy in this case is whether the case was properly referred to a master, or whether it should have been submitted to a jury.

The procedure to enforce payment of the lien of counsel for services in procuring judgment has been in some instances by summary application in the case herein the same was rendered.

See 51 Am. St., 260, and cases cited; *Hunt* v. *McClanahan,* 1 Heisk., 503 (1870); or by independent bill in equity for enforcement of lien. *Dowling* v. *Scales,* 1 Tenn. Ch., 618.

It is insisted in some jurisdictions that such matter can not, and ought not, to be introduced into and blended with any pending suit, but that they should be settled and decided in like manner as other cases. *Strikes Case,* 1 Bland, 57, 98; *Marshall* v. *Couper,* 43 Md., 46, 62.

We have not undertaken the task of examining the English or American cases supporting the common law doctrine to ascertain, if possible, how the lien was enforced.

Mr. Pomeroy, in his classification of equitable remedies, treats of the class where the remedy, though equitable, yet grants *pecuniary compensation.* There are three species where the final object is the recovery of money. The class of cases wherein equity, at the end of the enforcement of a remedial equitable right, awards a sum of money is really distinguishable from that ordinary class in which the relief consists simply in the recovery of a general pecuniary judgment, to be collected by execution out of the debtor's property generally, which is purely legal.

In these cases in which the relief is not a *general pecuniary judgment,* but a decree of money is sought to be obtained and paid out of some particular fund, it is to be readily perceived that equitable intervention is *primarily* essential to the recognition and enforcement of a right in good conscience and equity, before the court may award the *final pecuniary compensation.*

In such case it is assumed that the claimant has by contract, or from some act of omission by the debtor, a lien, charge or encumbrance upon some fund belonging to the latter. It is essential that a remedial form be pursued wherein the lien or

charge may be first established, and then enforced by sequestration of the fund.

The preliminary steps, in such actions being the first essentially to be taken—being primary and paramount—are what give the cause character and distinction. Among familiar examples of this remedial species are foreclosure of liens, of mortgage, of vendor, of bailee, and we may say of an attorney. A few well known equitable actions are wholly pecuniary in their object and relief. See *Pomeroy Eq. Jur.*, Sections 112, 237; *Knapp, etc., Co.* v. *McCaffrey*, 178 Ill., 107 (69 Am. St., 290); *Blair* v. *Smith*, 114 Ind., 114 (5 Am. St., 593).

The doctrine has constantly been recognized in this state. Where facts constituting a single cause of action call for both legal and equitable relief, the method of trial is determined by the nature of the cause. In all such cases one kind of relief will be *primary* or *paramount*, and the other incidental. If the primary or paramount relief is *equitable*, and the legal merely incidental, that is, if it is necessary to determine whether plaintiff is entitled to the equitable before the legal relief can be granted, then it is an equitable action, and triable to the court. If the paramount relief is legal and the equitable relief only incidental it is a jury case. *Kinkead Code Pl.*, Section 137-4; *Ellsworth* v. *Holcomb*, 28 O. S., 66; *Rowland* v. *Entrekin*, 27 O. S., 47; *Brundridge* v. *Goodlove*, 30 O. S., 374; *Chapman* v. *Lee*, 45 O. S., 356; *Coal Co.* v. *Verner*, 22 O. S., 372; *Fleming* v. *Kerkendall*, 31 O. S., 568; *Alsdorf* v. *Reed*, 45 O. S., 653. The same idea is expressed in the second paragraph of syllabus in *Wilson Improvement Co.* v. *Malone*, 17 O. S., 232.

And the character of the action—whether legal or equitable —is determined entirely from the facts alleged without regard to the prayer. *Gunsaullus* v. *Petit*, 46 O. S., 27; *Railway* v. *Thurston*, 44 O. S., 528; *Alsdorf* v. *Reed*, 45 O. S., 656; *Raymond* v. *Railway*, 57 O. S., 271.

In speaking of the lien of an attorney as a common law lien we have in mind the common law system of jurisprudence. It is as we have seen an equitable lien (*Fillmore* v. *Wells*, 10 Colo., 228). It is necessary to keep in mind the rule that the "equitable lien differs essentially from the common law lien, which is simply a right to retain possession," etc. *Pom. Eq. Jur.*, Section 1233.

It is the well settled rule of procedure, as shown by many cases, that a court of equity is the appropriate tribunal for the enforcement of an equitable, as distinguished from a statutory or common law lien.   *Vallette* v. *Canal Co.*, 4 McLean, 192; *Rigeley* v. *Inglehart*, 3 Bland., 540; *Hally Mfg. Co.* v. *Water Co.*, 48 Fed., 879; *Walker* v. *Casgrain*, 101 Mich., 604; *Smith* v. *Jackson*, 115 Mich., 192; *Buchan* v. *Sumner*, 2 Barb. Ch., 165 (47 Am. Dec., 169); *Fletcher* v. *Morey*, 2 Stony, 555, 565; *Kreling* v. *Kreling*, 118 Cal., 413; *Cairo, etc., R. R. Co.* v. *Fackney*, 78 Ill., 116; *Black* v. *Brennan*, 5 Dana, 310 (inn-keeper's liens); *Knapp* v. *McCaffrey*, 178 Ill., 107 (69 Am. St., 290; bailee's lien); *Bank* v. *Tumbler Co.*, 172 Pa. St., 614 (statutory lien on stock); *Brigel* v. *Creed*, 65 O. S., 40 (lien of pledgee). See note to 74 Am. St. Rep., 387.

Determination of this question depends upon the nature and character of the action.

It will be remembered that there are two causes of action, consisting of separate statement of the claims of Cyrus Huling and Frank A. Davis.   Were it not for this fact the claim would have been stated as but one cause.

The prayer asks that the court fix and determine the amount of the reasonable compensation at $10,000 and declare it a lien on the judgment.

It is claimed by counsel for defendant that the action is one for money only, and refers to the prayer and the summons bearing the endorsement of "Action for money," as tending to support that contention.

It is elementary that the prayer is no part of a cause of action, and that the nature and character of a cause of action is judged by the facts stated.

It is also fundamental that the Code of Civil Procedure did not alter, change, limit or enlarge existing rights of action, and that the latter are determinable by the principles of the common law, to which resort is had, as well, for guidance in concluding upon the nature and character of a cause of action stated in a petition.

It has been axiomatic in this commonwealth that the right of trial by jury guaranteed by the Constitution was the common law right.   That is, in action for the recovery of money only

(debt, convenant, trespass, case, assumpsit, conversion or trover) and those for the recovery of specific real (ejectment) or personal property (replevin) the right of trial therein is regulated by the statute providing for the same mode of trial which existed at common law.

The provisions of Sections 11379 and 11380 regulating the mode of trial of civil causes have since the enactment of the Code stood as an immutable mark of distinction between legal and equitable actions and rights and causes of action, as much as has the provision in the Constitution that the right of trial by jury shall be inviolate.

The meaning, effect and operation of this fundamental, constitutional and statutory law have been entirely clear and definite when considered in the light of the common law.

There has ever been a class of persons who look upon the civil action of the code with its essential incidents and characteristics, including mode of trial, as one to which new rights are attached beyond those affixed by the common law.

This view finds expression in pleading and practice, where a cause may be made to rest upon one theory and the evidence show another, or in a demand for the right of trial by jury in cases where relief by way of money is sought in connection with equitable relief.

Every lawyer and every judge knows that equitable and legal proceedings are essentially different from each other, in their origin, nature and object and that law and equity can not be administered in the same way, nor even in the same form, except as to the kind of pleading and action.

"Indeed, it would be matter of astonishment—if we were permitted to wonder that any man of common understanding, should have suffered the idea to enter his head, that legal and equitable proceedings could be moulded in the same form, and be measured by the same rules. Every person who has studied and understands the law as a science, knows that there is *substance* in the distinction between actions; and that those requirements, were really wise and indispensable safeguards and protections, in administering the most important as well as the most intricate of human sciences. * * * * The distinctions which mark law and equity are laid broad and deep in the nature of things." *LeRoy* v. *Marshall,* 8 How. Pr., 373.

In the case of *Fillmore* v. *Wells,* 10 Colo., 228 (3 Am. St., 567), where the question involved was the nature of the remedy for the enforcement of the lien of an attorney, whether it be in law or equity, the contention on the one side being that the action should have been brought in law first to determine the contract as well as the compensation, and then institute proceedings in equity to enforce the lien. The court stated:

"The distinction between causes of action at law and in equity doubtless remains. No attempt has been made to abolish it, and any such attempt would be futile. The code merely abolishes forms of actions, substituting for the numerous common law forms, but one general method of pleading, whether at law or in equity. And unless a court of equity would, before the code, have been properly clothed with jurisdiction over the cause of action stated in the complaint before us, the action can not be maintained under the code."

The constitutions recognized this distinction imposing upon the power of the Legislature the restriction to preserve distinct methods of enforcing legal and equitable rights. A leading *distinction* between common law actions and suits in equity consists in their different *modes of trial* (*Reubens* v. *Joel,* 13 N. Y., 488, 484). The Legislature could not reduce all actions to one homogeneous form, because it could only be done by abolishing trial by jury with its inseparable accompaniment, compensation in damages, or pecuniary judgment.

The warrant or excuse for thus referring to the fundamentals is by reason of the fact that expressions by learned judges of the court of highest authority in this state are brought to our attention touching the question of extension of the right of trial by jury. It is said that:

"The right of a party to trial by jury * * * does not depend upon the character of the principles upon which he may base his right to relief, but upon the nature and character of the relief sought. If the relief sought is a money judgment only, and all that is required, * * * it is immaterial whether his right of action is based upon what were formerly regarded as equitable, or what were regarded as legal, principles. If the relief sought is a judgment for money only, the fact that before the adoption of our reformed procedure, the proper remedy would have been a suit in equity, does not affect the right of

either party to a trial by jury upon any issue of fact made by the pleading.'' Minshall, J., in *Gunsaullus* v. *Petit*, 46 O. S., 27.

And again the court in discussing Section (5130) 11379, states:

''By this section the Legislature has exercised the power vested in it by the Constitution to extend the right of trial by jury to cases which were not so triable at the time of the adoption of that instrument. * * * This section in its application to many cases ignores the distinction between actions at law and suits in equity, and extends the right of trial by jury to all actions for the recovery of money only, although the principles upon which a recovery may be had are equitable in their nature and origin, as in actions to enforce liability under equitable doctrines of contribution and subrogation.'' *Willson Imp. Co.* v. *Malone*, 78 O. S., 232; *Webb* v. *Stasel*, 80 O. S., 122, 126; *Lange* v. *Lange*, 69 O. S., 346.

It is respectfully submitted that these expressions of opinion were beside the questions of trial involved in each of the cases.

There is as much reason for construing Section 11379 in the light of the common law to determine whether jury trial was extended, as there is for the interpretation of the constitutional provision that the right of trial by jury shall be inviolate by the aid of the common law.

Indeed the rule of interpretation applied to the constitutional provision makes it imperative that we shall so construe Section 11379 as that it shall not *abridge* the right of jury trial. ''This, added to the fact that the code did not abolish the *substantive distinction* between actions at law and suits in equity, aptly demonstrates that the true rule of construction is that Section 11379 was intended to do no more than to provide for jury trial in the common law causes of action precisely as they were, while Section 11380 was intended to provide the mode of trial for all equity cases as previously existing.''

The word *only* was used in the statute for a clear and definite purpose; it was to mark the distinction between those cases in which equitable relief is neither asked nor essential, as well as those cases in which the relief sought in equity is merely incidental to the cause of action which itself is primarily for money

*only.*  When this section was first enacted the word *"only"* did not appear, it having been inserted in the revision of 1880.

A cause wherein equitable relief sought is merely incidental is clearly distinguishable from one wherein the equitable relief prayed for is primary and paramount, and the legal relief is merely incidental.

This brings us to the point of determining whether the cause of action of plaintiff is legal or equitable.

This question is decided now by the same test and means as when separate courts administered law and equity.  The one court in code procedure administers law and equity the same as did the separate courts formerly—except as causes may now be united in one action.

The petition of plaintiff, in substance, sets forth that as an attorney at law he rendered legal services in obtaining judgment; it states the fact of rendition of judgment, and shows that the same remains unpaid; it avers that Walcutt is insolvent and has no funds out of which the services may be paid other than from the judgment.  Plaintiff claims a lien on the judgment for his services and seeks its enforcement against the fund.

We refer again to the cases in our own state touching the mode of trial.  If the views expressed in some of them, which we have thought *dicta* is to prevail, it will have a material bearing in a case like this.

A peculiar problem is presented by the fact that the syllabus in *Gunsaullus* v. *Petit, supra,* which is regarded as the law of the case, especially states the very matter which we think is not the law, and which in fact does not state what was decided in that case.  The action was by an administrator of a deceased wife against an administrator of her deceased husband to recover money which the husband received which belonged to his wife.  The claim was that it was received by the husband in trust for his wife, and because of this trust feature it was claimed that it was an equitable action.  It seems perfectly clear that the demand was for money only, the receipt of the money under such circumstances gave rise to an implied contract to repay it, upon which assumpsit would lie.  Therefore there was no warrant for contending that the trust relation had the effect of constituting the cause one in equity.

In *Willson Improvement Co.* v. *Malone,* 78 O. S., 232, the petition sought judgment upon four causes of action for a balance of $118,544 on a contract, the sole claim that it was appealable being based upon the fact that the items of account were numerous, and therefore an accounting was necessary. The learned judge used language to which exception is taken, and which we think was not essential to the decision, to the effect that Section 11379 (5130) "in its application to many cases ignores the distinction between actions at law and suits in equity, and extends the right of trial by jury to all actions for the recovery of money only, although the principles upon which a recovery may be had are equitable in their nature and origin, as in actions * * * of contribution and· subrogation." Our opinion is that the statute is so framed as to directly recognize the substantive distinction between actions at law and suits in equity, and that it does not extend the right of trial by jury, but is merely declaratory of the common law.

The true rule is stated in the case that the statute "does not, however, extend the right of trial by jury to cases calling for any form of relief peculiar to a court of equity."

In *Lange* v. *Lange,* 69 O. S., 346, a case which was purely one of law, a similar statement is found that "In an action for money, not requiring a decree granting equitable relief, is not appealable although the determination of the rights of the parties may involve the application of principles which are of equitable origin and nature, contribution and exoneration being mentioned as examples."

Again in *Webb* v. *Stasel,* 80 O. S., 122, 126, it is stated:

"As we have had frequent occasion to point out, the appealability of an action can not be determined by considering whether the principles upon which it proceeds are legal, or equitable in their origin and nature. While it is true that all cases which were triable to a jury before the adoption of the present Constitution are still so triable, the converse is not universally true."

It is then stated that Section 11379 extends the right of trial by jury to issues of fact in actions for money only, even though the action be founded upon principles which are equitable in origin and nature.

We have dwelt upon the cases and the law at length because if the opinion expressed by the individual judge, which we confidently assert to be *dictum*, should be literally applied to a case of this character, the result would be, that it was probably a mistake to have referred this case to the master.

But we insist that these expressions of opinion can not be sound unless it is meant to obliterate the inherent distinction between actions at law and suits in equity. This can not be the evident intention, because the true rule of distinction between causes within the jurisdiction of law and equity is always recognized, viz., Section 11379 does not extend the right of trial by jury to cases calling for any form of relief peculiar to a court of equity.

The answer to the claim that actions for contribution and subrogation are examples of the extension of the right of trial by jury is that these two causes of action have long been considered within the concurrent jurisdiction of law and equity, since the final reliefs are the same in form and substance as that granted under like circumstances by a judgment at law—a general pecuniary recovery—and since the primary rights and interests of the parties are generally recognized and protected by the law. *Pomeroy's Eq. Jur.*, Sections 1416-1419.

The fundamental and elementary principles stated in the beginning, as well as the authorities cited and discussed and sound reasoning and principle, fully warrant the conclusion that the right of trial by jury has not been changed or extended, but that it remains as it was under the old system, that Section 11379 merely preserves the common law right of trial by jury, that it does not extend to causes calling for relief peculiar to a court of equity; that "within the meaning of the section an action for money is an action for money. *only*, unless there is sought some form of relief peculiar to courts of equity." *Willson Imp. Co.* v. *Malone*, 78 O. S., 232.

This case is analagous to that of *Brigel* v. *Creed*, 65 O. S., 40, in which it was held that an action to foreclose the pledge of stock is not an action for a money judgment only, the object being to obtain an order for the sale of the stock, and an application of the proceeds to the payment of the amount due on the note, neither party being entitled to a jury trial.

In this case no judgment for money only is asked against Walcutt. The court is asked to find and declare an equitable lien, for the reasonable value of the plaintiff's services and to subject to its payment so much of the fund in the hands of the judgment debtor as will be sufficient to satisfy it.

The case of *Fillmore* v. *Wells,* 10 Colo., 228 (3 Am. St., 567), is precisely in point:

"The attorney's lien, whether under the statute or at common law, is equitable in its nature. Even the decisions in this country which confine its existence and application to the narrowest limits, always speak of it as an equitable lien, right or privilege. It is not property in the thing which gives a right of action at law. It is a charge upon the thing which is protected in equity. Courts of law may recognize it when the *res* is in possession of the lienor, and the owner is seeking to deprive him of such possession. But where the thing is not in the possession, and some affirmative action is required by the attorney, he like other lien claimants must seek relief in equity. In some instances a formal suit should be instituted; in others an application to the court rendering the judgment for the proper order would be sufficient.  *  *  *  But since a court of equity is the only forum that can enforce, by proper decree, the lien rights, we are of opinion that this is one of those cases wherein such court may take and retain jurisdiction for all purposes. Having assumed jurisdiction to enforce the lien, it would be encouraging a multiplicity of suits, and in this, as in other respects, contrary to established procedure in equity, to say that the court of equity shall not determine the incidental though material questions involved."

*McKelvey's Appeal,* 108 Pa. St., 615, supports the conclusion reached here that defendant was not entitled to a jury trial. See also *Strong* v. *Taylor,* 82 Ala., 213.

The case of *Meek* v. *McCall,* 80 Ky., 371, cited by counsel for defendant, supports the views here expressed, rather than those contended for by defendant.

The finding of the court is that the plaintiff and the cross-petitioners have an equitable lien upon the judgment obtained by Walcutt against the city of Columbus; that they are entitled to payment of the reasonable value of their services out of the funds now held by the city by order of this court for the satisfaction of their claims. The report of the master as to the

amount and the law is approved and confirmed, and the exceptions to the same are overruled.  Decree and judgment may be accordingly entered._